IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAMAR McCULLOUGH | : |
|     Plaintiff | : |
| v | :    Civil Action No. RWT-09-206 |
| D.L. KITIS, *et al.* | : |
|     Defendants | : |

o0o

**MEMORANDUM OPINION**

Pending is Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 28. Plaintiff was advised of his right to file a Response in Opposition to the motion and of the consequences of failing to file a response, but has filed nothing further. Paper No. 29. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2008). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

**Plaintiff's Allegations**

Plaintiff claims that his life has been threatened by other inmates because of his "high profile case."[1] Paper No. 1 at p. 5. He states that on June 30, 2008, he filed an administrative remedy complaint requesting assignment to protective custody because he was "badly beaten up" by Davon Pearson on June 1, 2008. Id. He claims the June 1, 2008 assault was his reason for refusing housing on June 7, 2008, when he claims he explained to Lt. Kitis that he needed protective custody because he had been knocked unconscious by Pearson. Id. He further alleges that he told Kitis that correctional officers were attempting to cover up the assault by refusing to take pictures of his face. Id. Plaintiff states he told Kitis that he had tried to endure repeated

---

[1] Plaintiff was convicted of breaking into the home of Alonso Williams and raping, sodomizing and repeatedly stabbing Williams' eight year-old daughter. Paper No. 28 at Ex. 1.

assaults, but could take no more. He claims during the week of June 1 through 7, 2008, he was attacked by Pearson and other inmates. Plaintiff states he was enrolled in school at the time of the assaults and the cameras located in that area of the prison would have captured his swollen face. Despite his complaints, Plaintiff was left in the same cell.

Plaintiff claims that when his disciplinary segregation time for refusing housing ended on July 6, 2008, he wrote a note explaining that inmates Davon Pearson and Elmer Galvagron should be put on his enemy list, and gave the note to Officer Thomas. He alleges that instead of giving the note to his supervisor, Thomas gave the note to Pearson and threatened Plaintiff stating that he and another officer would physically assault Plaintiff and charge him for assaulting an officer.

Plaintiff claims that because he was not moved, he was assaulted again between 8:30 and 9:00 p.m. on November 9, 2008, this time by inmate Charlie Matthews. Id. at p. 6. Plaintiff states that this time the injuries to his face were photographed. He claims he spoke with prison officials on three different occasions about his high profile case, and how inmates are plotting against him and do not want to share a cell with him. Plaintiff states he told Lt. Durst that he had been assaulted, and claims Durst talked him into "trying to trust NBCI prison administration." Paper No. 1 at p. 7. Plaintiff claims he completed two written statements, one before he was convinced to trust prison officials and one after. Id. Plaintiff claims he continued to request protective custody due to his high profile case, but officials continued to assign him to double cells.

Specifically, Plaintiff claims he met with his case manager, M. Couer, on November 12, 2008, December 2, 2008, and December 31, 2008, to discuss his concerns that he is not safe in general population because the nature of his crime was well-publicized. He also told his case

manager that Maryland inmates who knew him had been transferred out-of-state therefore he would be known in those prisons too. Plaintiff claims Couer and others responded to his concerns by telling him he would be assigned to administrative segregation, in a cell with another inmate whom they would allow to assault Plaintiff, and then they would send him out of state. Paper No. 1 at p. 8.

Plaintiff further claims that various correctional officers have proclaimed that it is just a matter of time before they allow another inmate to murder him. He alleges officers try to keep him from going to recreation by insisting he go to recreation with inmates they know will harm him. As a result, Plaintiff stays in his cell unable to have recreation and call relatives. He further believes prison officials are tampering with his mail due to cancelled order notices he has received due to non-payment and misinformation provided to the vendor. Paper No. 1 at p. 9.

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

3

showing that there is a genuine issue for trial.'" <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  <u>Bouchat</u>, 346 F.3d at 526 (internal quotation marks omitted) (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986)).  "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.</u>, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

In order to prevail, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. <u>See</u> <u>Pressly v. Hutto</u>, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833– 34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." Id at 837; see also Rich v. Bruce, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Defendants allege, and Plaintiff fails to refute, that he is not in any known danger because he has been transferred to Patuxent Institution.  Paper No. 28 at Ex. 9, p. 2 .  With respect to the alleged assault occurring on June 1, 2008, Defendants assert Plaintiff provided a statement regarding his injury which did not indicate he had been assaulted.  Id. at Ex. 3, p. 5. A medical encounter form dated June 2, 2008, indicates that Plaintiff claimed he fell off of a chair, bumping his right eye and the left side of his mouth.  Id. at Ex. 4, pp. 2—4.  Although Plaintiff claimed he met with Lieutenant Kitis on June 30, 2008, to inform him of the actual cause of his injuries, Kitis recalls no such meeting and there are no written reports regarding such a meeting.  Id. at Ex. 6.  Kitis claims he discussed Plaintiff's assignment to general population with Case Manager Bryan Hoffman, but they concluded that Plaintiff's claim of being assaulted could not be investigated because it was reported too long after the alleged occurrence.  Id. at Ex. 3, p. 46.

Officer Thomas denies receiving a note from Plaintiff requesting that Elmer Galvangiron and Davon Pearson be placed on his enemies list.   He further denies threatening Plaintiff in any way.  Id. at Ex. 5.  Additionally, Officer Markle denies threatening to assault Plaintiff and denies hearing Thomas threaten him.  Id. at Ex. 7.

Defendants admit that Plaintiff sent a request to Case Manager Hoffman requesting Galvangiron and Pearson to be placed on his enemies list and requesting placement on protective custody on June 23, 2008.  Id. at Ex. 2, p. 43.   Hoffman conducted an investigation but could find nothing to connect Plaintiff with Galvangiron and Pearson.  Id. at p. 45.  At the time of his request, Plaintiff was confined to disciplinary segregation for refusing a housing assignment.

The second assault claimed by Plaintiff occurred on November 9, 2008.  He reported that

he was assaulted by an unknown assailant in Housing Unit 4. Id. at Ex. 3. One month later Plaintiff admitted that he knew his assailant and named his cell mate, Charlie Matthews. Id. at Ex. 2, p. 23. At the time he reported the assault Plaintiff told prison staff he needed to be placed on permanent protective custody status because of the nature of his conviction. Id. at p. 35. Plaintiff did not make a formal request for that status and later told prison staff he did not want to be placed on administrative segregation or protective custody because it would impede his access to programming. Id. at Ex. 3, p. 35. Upon learning the identity of Plaintiff's assailant, prison staff investigated the incident again and recommended that he remain assigned to administrative segregation or be transferred to another prison.

Plaintiff was transferred to Western Correctional Institution (WCI), where he continued to claim a need for protection due to the notoriety of his crime. Prison staff responded by assigning him to administrative segregation and conducting investigations into his claims. Ultimately there was not enough evidence to support Plaintiff's assertions that there were widespread threats against him due to information about his conviction. Plaintiff was later transferred to Patuxent Institution, where Defendants claim he is in no danger from other inmates.

The undisputed facts establish that Plaintiff's claims that he was assaulted or that he was in danger were investigated by prison staff and found to be unsupported by any verifiable evidence. The actions taken by Defendants are not indicative of deliberate indifference to Plaintiff's safety, rather they demonstrate Defendants' attentiveness to his allegations when he raised them. Plaintiff does not dispute those assertions; therefore, Defendants are entitled to summary judgment in their favor.

A separate Order follows.

November 4, 2009

                   /s/
              ROGER W. TITUS
         UNITED STATES DISTRICT JUDGE